UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOVERNMENT ACCOUNTABILITY PROJECT,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No: 17-2518 (CRC) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** | ) |
| **Defendant.** | ) |

### DECLARATION OF JAMES V.M.L. HOLZER

I, James V.M.L. Holzer, declare and state as follows:

1.  I am the Deputy Chief Freedom of Information Act (FOIA) Officer for the Department of Homeland Security (DHS) Privacy Office (PRIV). In this capacity, I am the Department official responsible for implementing FOIA policy across DHS, and responding to requests for records under the 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by DHS PRIV in this capacity since May 2016. I previously served as the Director of the Office of Government Information Services within the National Archives and Records Administration, and prior to that I served as the Senior Director of FOIA Operations for DHS. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case files established for processing the subject request and upon information furnished to me in the course of my official duties.

2.  Through the exercise of my official duties, I have become familiar with the background of plaintiff's FOIA request and DHS's response. I have also become familiar with the background of this litigation and have read a copy of the complaint.

**The DHS FOIA Process**

3.      DHS is responsible for counterterrorism, cybersecurity, aviation security, border security, port security, maritime security, administration and enforcement of immigration laws, protection of national leaders, protection of critical infrastructure, detection of and protection against chemical, biological and nuclear threats to the homeland, and responding to disasters.

4.      Within DHS, PRIV performs the following functions: evaluates Department legislative and regulatory proposals involving the collection, use, and disclosure of PII; operates a Department-wide Privacy Incident Response Program to ensure that incidents involving PII are properly reported, investigated and mitigated; responds to complaints of privacy violations and provides redress; and provides training, education and outreach to build a culture of privacy across the Department and transparency to the public.  DHS PRIV also centralizes FOIA and Privacy Act operations to provide policy and programmatic oversight, and supports implementation across the Department.

5.      DHS comprises several operational and support components.  While some DHS Components (e.g., Customs and Border Protection (CBP)) maintain a combined office that handles matters related to both the Privacy Act and the FOIA, others (e.g., United States Immigration and Customs Enforcement (ICE)) maintain two separate offices, one for matters related to the Privacy Act and one for matters related to the FOIA.

6.      Each Component maintains its own case tracking system to assign case control numbers and track the status of all FOIA and Privacy Act requests received by that

Component. It is the practice of all Components to refer to the case control numbers in all correspondence with requesters. DHS FOIA logs all incoming FOIA and Privacy Act requests into their automated case tracking system and inputs information about each request into the system (including, but not limited to, the requester's name and/or organization and, in the case of FOIA requests, the request's topic). All requesters are then notified of the case control numbers assigned to their requests. The automated case tracking system is text searchable on a field-by-field basis.

7. When any DHS Component receives a referral or tasking from DHS Privacy, it generally mirrors the actions of DHS Privacy. Component FOIA personnel make a determination regarding which subcomponent or program office may have responsive documents, and then task that office with a search.

## PLAINTIFF'S FOIA REQUEST

8. On April 4, 2017, DHS PRIV received a FOIA request (the request) dated April 4, 2017, from the Plaintiff. The request sought "[a]ny and all nonexempt, unclassified correspondence between White House staff and the DHS concerning ideological tests at the U.S. border. Any and all correspondence concerning searches of cellphones, the protocols, information about who was searched (with identifying information redacted), search rates, protocols of a search is refused, etc, for citizens and non-citizens, at the U.S. border. In addition, I would ask that you search for any records generated in connection with topics listed above that raised or were responding to compliance of 5 U.S.C.§ 2302(b)(8)."

9. DHS acknowledged receipt of the Request and assigned it tracking number 2017-HQFO-00612.

10.     Upon initial review of this request, DHS PRIV determined that the records being sought would most likely be located within the DHS Office of Policy (PLCY).  At the time the request was received, which was approximately three months into the new administration, there were numerous vacancies in the senior leadership at DHS HQ. Therefore, PLCY was acting as the lead office for the implementation of the Executive Orders. Due in part to this leadership role, it was DHS PRIV's belief that PLCY would be the most likely office to have communications with the White House staff regarding any ideological tests at the border, if such records in fact existed.  Pursuant to that determination, DHS PRIV forwarded the request to PLCY for that office to conduct a search.   Because DHS PRIV determined that PLCY was in a better position to determine which search terms would mostly likely yield records responsive to the request and which offices within PLCY would most likely maintain such responsive records, DHS PRIV did not assign search terms for PLCY to use or direct PLCY to search particular offices, but instead relied on PLCY's expertise to identify search terms and offices for the search. After conducting a search, PLCY reported to DHS PRIV on April 20, 2017, that it had no responsive records.

11.     On November 21, 2017, Plaintiff filed this cause of action against DHS. Thereafter, on December 1, 2017, DHS PRIV sent Plaintiffs its response that it had located no responsive records.

12.     Out of an abundance of caution, and in order to ensure that any and all responsive documents were located, DHS PRIV conducted an additional broader search for responsive records with the assistance of the Office of the Chief Information Officer (OCIO). On January 18, 2018, DHS PRIV sent OCIO two search taskers.

13.     The first tasker instructed OCIO to search for "any and all emails" between DHS.GOV and any 'EOP.GOV' address using the keywords/filters "ideological test" and "border."   The tasker specified the EOP.GOV address because, to the best of DHS PRIV's knowledge, that is the only suffix used by White House staff in their email addresses.

14.     The second tasker instructed OCIO to search for "any and all emails" between DHS.GOV and any 'EOP.GOV' address using the keywords/filters "search" and "cellphone."

15.     The taskers to OCIO were not limited to any particular program offices at DHS Headquarters, but were directed at all Headquarters offices, including additional searches of PLCY.  OCIO conducted a search of all electronic records maintained or transferred through the agency's email system.  Since it is the practice of the agency to primarily communicate electronically through email as opposed to manually forwarding paper copies of correspondence and documents between offices and personnel, DHS PRIV determined that an electronic search would retrieve any responsive records.  Because this search included PLCY and key words from the FOIA request itself, it would have encompassed any prior searches performed by PLCY.

16.     OCIO responded to DHS PRIV on January 23, 2018, that its search for records pursuant to the first tasker yielded zero records and that its search for records pursuant to the second tasker returned 965 megabytes of records.  Upon uploading the search results from OCIO into FOIA Express (the DHS PRIV FOIA processing software), DHS PRIV was able to determine that, after de-duplication, there were 807 documents to review for responsiveness and potential processing under the FOIA.

17.     DHS PRIV conducted a document-by-document key word search of all 807documents to determine whether the subject matter of the documents was responsive to the request. Upon completion of that document-by-document review, DHS PRIV determined that none of the 807 documents were responsive to the request.

18.     In a letter dated December 1, 2017, DHS PRIV notified the Plaintiff that it had located no records responsive to the FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of June, 2019.

James V.M.L Holzer
Deputy Chief FOIA Officer
Privacy Office
U.S. Department of Homeland Security