**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GOVERNMENT ACCOUNTABILITY PROJECT, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 17-cv-2518<br>)<br>) Judge Christopher R. Cooper |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFF'S COMBINED MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION**

This FOIA suit involves two high-profile subjects on which the administration has made or has discussed making controversial policy changes: increasing searches of electronic devices at the border, and "extreme vetting" in the form of "ideological tests" akin to those used during the Cold War. DHS has not established beyond material doubt that its search methodology was reasonably likely to uncover all responsive communications between DHS and the White House on these subjects, and with regard to possible illegal retaliation against DHS employees for disclosing information with regard to these subjects, *see* 5 U.S.C. § 2302(b)(8), DHS has conducted no search at all.

DHS should be denied summary judgment. Plaintiff should either be granted summary judgment or the opportunity to conduct discovery.

**I.    LEGAL STANDARDS**

FOIA limits agencies' ability to keep records secret and reflects a policy favoring disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754 (1989). The Supreme Court has repeatedly stressed "the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493

U.S. 146, 151 (1989).  A central purpose of FOIA is to "check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

An agency "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents."  *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  It "must set forth sufficient information in its affidavits for a court to determine if the search was adequate."  *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  What constitutes a reasonable search will vary from case to case, but an agency must construe the scope of a request liberally.  *Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*, 725 F. Supp. 2d 78, 81 (D.D.C. 2010) (citation omitted).

An agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  If there is substantial doubt about the adequacy of the search, the public body has not satisfied its obligations.  *See, e.g., Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003).  Discovery is appropriate when a public body "has not taken adequate steps to uncover responsive documents."  *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002); *see also SafeCard v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

## II.   DHS HAS NOT PROVEN BEYOND MATERIAL DOUBT THAT IT CONDUCTED A REASONABLE SEARCH FOR RECORDS ABOUT IDEOLOGICAL BORDER TESTS AND CELLPHONE SEARCHES

For multiple reasons, DHS has not shown beyond material doubt that it conducted an adequate search for records on subjects for which it is implausible that no communications occurred.  *See* Plaintiff's Statement of Undisputed Material Facts ("PSUMF") ¶¶ 1-7.

First, a search is not reasonably thorough when the agency fails to include logical variations of the terms used to describe the subject matter being sought.  *Summers v. Dep't of*

*Justice*, 934 F. Supp. 458, 461 (D.D.C. 1996) (search using only "commitment" in request for J. Edgar Hoover's "commitment calendars" unreasonably failed to include "appointment" and "diary," even though the requester had not used those specific terms). Here, "test" could have been referred to as "assessment," "evaluation," "inquiry," "vetting," "vet," "screening," "screen," or other such terms. "Ideological" could have been referred to as "political," "values," "cultural," etc. "Cellphone" could have been referred to as "cell phone," "phone," or within the broader category of "device," or DHS and the White House may have discussed searches of "Facebook," "Twitter," "social media," or other such things that reside on cellphones and could be the focus of any cellphone searches.

Second, DHS ignored clear leads that "vet," "vetting," "screening," "electronic device," "social media," and "inspection" have been used by Donald Trump and DHS in speeches and official documents regarding these subjects and should have been integrated into the search. PSUMF ¶¶ 2, 8-10. Agencies may not ignore clear leads when crafting their searches. *Coleman v. DEA*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015) (agency may not ignore clear leads suggesting "additional search terms that should been used") (quotation and citation omitted); *Utahamerican Energy*, 725 F. Supp. 2d at 84 ("omitting from the search an alternative name by which the subject of the search is known renders the search inadequate"). Notably, Plaintiff did not provide "ideological test" or "cellphone search" as a search terms, but rather, as general subject matter. *See Coffey v. Bureau of Land Mgmt.,* 277 F. Supp. 3d 1, 9 (D.D.C. 2017) (agency potentially relieved of obligation to develop thorough search terms where requester has provided a comprehensive list of terms).

Third, in addition to ignoring these clear leads, DHS failed to inquire with relevant subject matter experts what search terms would have been used to discuss the issues. This too

renders the search inadequate. *See Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 168 (D.D.C. 2016) (CIA search was reasonable where "it tasked three relevant Directorates to conduct full-text key word searches 'using at least' the enumerated search terms, as well as any additional search terms deemed likely to yield responsive documents by subject matter experts within each Directorate").

Finally, DHS searched only for emails, and only on official government email accounts. It provided no explanation for why it did not search additional forms of electronic communications or private email accounts. *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 143 (D.D.C. 2017) (search unreasonable where agency "did not search instant messages, text messages, or other electronic communications" and failed to explain why doing so would not be feasible). And it ignored the very real possibility that such other forms of communication have been used by DHS officials. PSUMF ¶¶ 11, 12.

DHS has not proven beyond material doubt that it conducted a reasonable and thorough search for responsive records.

### III. THE COURT SHOULD REVIEW *IN CAMERA* THE ALLEGEDLY NONRESPONSIVE RECORDS OR SOME REPRESENTATIVE SAMPLE

In response to this lawsuit, DHS conducted a supplemental search for the first two parts of the request and located around 800 emails hitting on the search terms DHS used for one of them. Dkt. # 8-2, ¶ 17. DHS claims that it "conducted a document-by-document key word search" of these records and that none were responsive. *Id.* DHS has not explained what this means, but it appears that DHS used some kind of further key word search within these records to determine whether they were responsive and did not review the records in full. DHS offers no details and no justification for this process. The Court should therefore either order these records

produced or conduct an *in camera* inspection of these supposedly non-responsive records or some representative sample.

## IV.     DHS HAS CONDUCTED NO SEARCH AT ALL FOR THE THIRD PART OF THE REQUEST

With regard to the third part of the request, seeking "any records generated in connection with topics listed above that raised or were responding to compliance of 5 U.S.C. § 2302(b)(8)," DHS has provided no indication that it conducted any search of any kind, let alone a reasonable one.  This is obviously inadequate.  *E.g.*, *Nation Magazine*, 71 F.3d at 890.

## V.     CONCLUSION

For these reasons, DHS's motion for summary judgment should be denied.  Plaintiff's motion should be granted, and DHS should be ordered to conduct a more thorough search, or in the alternative, Plaintiff should be permitted limited discovery ascertain the extent to which responsive records exist and what further search should be conducted.

RESPECTFULLY SUBMITTED,

*/s/ Matthew V. Topic*

_____
Attorneys for Plaintiff
GOVERNMENT ACCOUNTABILITY PROJECT

Matthew Topic, Bar No. IL0037
Joshua Burday, Bar No. IL0042
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
matt@loevy.com
joshb@loevy.com

## **CERTIFICATE OF SERVICE**

I, Matthew V. Topic, an attorney, certify that on July 27, 2018, I caused the foregoing PLAINTIFF'S COMBINED MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew V. Topic*