**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GOVERNMENT ACCOUNTABILITY PROJECT, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 17-CV-2518 (CRC) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, United States Department of Homeland Security ("DHS"), by and through undersigned counsel, respectfully submits this combined reply to Plaintiff's memorandum in opposition to Defendant's motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment.

The subject of this litigation is Plaintiff's April 4, 2017 FOIA request to DHS for documents related to: "Any and all nonexempt, unclassified correspondence between White House staff and the DHS concerning ideological tests at the U.S. border. Any and all correspondence concerning searches of cellphones, the protocols, information about who was searched (with identifying information redacted), search rates, protocols of a search is refused, etc, for citizens and non-citizens, at the U.S. border."  (ECF No. 1-2)  The request also sought "any records generated in connection with topics listed above that raised or were responding to compliance of 5 U.S.C.§ 2302(b)(8)." (*Id.*)

As discussed in DHS's motion, with respect to the first two parts of the request, DHS conducted a global search within the email of all DHS Headquarter offices for communications between those offices and White House staff that utilized key words derived from each part of the FOIA request. Specifically, DHS conducted a search using the suffix dhs.gov (to capture communications to or from DHS Headquarters offices) and the suffix eop.gov (to capture communications to or from White House staff) and the key terms "ideological test" and "border." DHS conducted a separate search using the suffix dhs.gov and the suffix eop.gov and the key terms "cellphone" and "search." (ECF No. 8-2, Holzer Decl. ¶¶ 13-15) DHS's search identified 807 potentially responsive documents. (*Id.* ¶ 16). After conducting a document-by-document review, DHS determined that none of the documents were responsive to Plaintiff's request. (*Id.* ¶ 17).

The third part of the request sought "any records generated in connection with topics listed above that raised or were responding to compliance of 5 U.S.C.§ 2302(b)(8)." To the extent this part of the request sought records from within DHS's search results to the first two parts of the request, there were no responsive records. (Supp. Holzer Decl. ¶ 11) DHS's supplemental search, which was not limited to communications between DHS and the White House, also did not reveal any records responsive to the third part of the request. (*Id.* ¶ 12)

In opposition to DHS's motion for summary judgment, Plaintiff raises several arguments as to why Plaintiff contends DHS's search was inadequate. As discussed below, the issues raised by Plaintiff do not call into question the adequacy of DHS's search. Accordingly, summary judgment should be granted to DHS.

**ARGUMENT**

**I. LEGAL STANDARD**

To reiterate the standard, summary judgment is appropriate when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. In a FOIA case, the Court may award summary judgment solely on the basis of information provided in declarations when the declarations describe with reasonably specific detail the efforts of the agency, and are not controverted by either contrary evidence in the record, or by evidence of agency bad faith. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

In opposing a summary judgement motion, Plaintiff may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Instead, Plaintiff must "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. In the Opposition, Plaintiff fails to raise any genuine issue of material fact in this case. Therefore, Defendant is entitled to judgement as a matter of law and respectfully requests that the Court enter summary judgement in Defendant's favor, pursuant to Fed. R. Civ. P. 56.

**II.     PLAINTIFF'S ARGUMENTS DO NOT RENDER DEFENDANT'S SEARCH INADEQUATE.**

An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was

reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted).  Additionally, the search "does not have to be exhaustive." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). "'[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but the appropriateness of the methods used to carry out the search.'" *Ancient Coin Collectors Guild v. U.S Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).

      Plaintiff challenges the adequacy of DHS's search by first asserting that DHS failed in its key word search to "include logical variations of the terms" used in the FOIA request. Specifically, as to the first keyword search, Plaintiff contends that DHS should have used, in addition to the term "ideological," the words "political," "values" and "cultural," and, in addition to the term "test," the words "vetting," "vet," "screening," and "screen." (Opp. at 3.) None of these additional terms, however, appear in the FOIA request and, prior to the filing of its opposition, Plaintiff never proposed that DHS utilize such terms.

      DHS's burden under FOIA is to conduct a reasonable search and, to do so, the agency may rely on the language of the FOIA request to construct its search. *Whitmore v. DOJ,* 132 F. Supp. 3d 69, 77 (D.D.C. 2015) ("An agency may rely on the plain language of the request itself and proceed accordingly.")  DHS has no obligation to divine from a plainly worded FOIA request unstated terminology that a requester may wish to be included in the search. *See, e.g., Leopold v. NSA,* 118 F. Supp. 3d 302, 309 (D.D.C. 2015) ("ultimately the terms 'federal judges' and 'state judges' are terms taken directly from the request, and were reasonably calculated to capture any responsive records"); *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993) ("Because

the scope of a search is limited by a plaintiff's FOIA request, there is no general requirement that an agency search secondary references or variant spellings.").

The D.C. Circuit addressed a related issue in *Kowalczk v. DOJ,* 73 F.3d 386 (D.C. Cir. 1996), that offers guidance on the "rare case" when an agency may have an obligation to search beyond the four corners of a request. There, the Court explained:

> The agency is not required to speculate about potential leads. More specifically, the Bureau is not obliged to look beyond the four corners of the request for leads to the location of responsive documents. Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request. This is not to say that the agency may ignore what it cannot help but know, but we suspect that it will be the rare case indeed in which an agency record contains a lead so apparent that the Bureau cannot in good faith fail to pursue it.

*Id.* at 389. Thus, as recognized in *Kowalczyk,* it is the "rare case" where responsive documents actually located by the agency clearly indicate that other locations should be searched. *Id.*

Here, the FOIA request at issue was narrowly focused and used specific terminology in describing the records sought. Utilizing the terms of the request, the agency's search did not identify any responsive documents and, therefore, the results of that search provided no additional leads that would have required any modification to its key word search. *Id.* ("His FOIA request contains so little information that, in order to incur any obligation to search the New York field office, the Bureau would have had to find a document at headquarters specifically indicating that documents related to a case bearing the number 88 CR 701 were located in its New York office. Kowalczyk brings no such document to our attention, nor have we found one among the documents that the FBI located in Washington.")

In support of its contrary position, Plaintiff cites to *Summers v. Dep't of Justice*, 934 F. Supp. 458 (D.D.C. 1996), in which the Court held that the FBI should have utilized the additional terms "appointment" and "diary" in conducting a search for a FOIA request seeking

5

the Director's "commitment calendars." *Id.* at 461.  Plaintiff, however, reads *Summers* too broadly.  The Court there did not hold that the FBI erred in initially formulating its search utilizing the term "commitment," which was taken directly from the language of the request. Instead, the Court observed that the result of that search produced appointment and daily calendars and then concluded, apparently from that search result, that "the terms 'appointment' and 'diary' are two of the most common terms used to describe the 'commitment calendars' requested by the plaintiff." *See id.*  Thus, *Summers* is properly understood as being a "rare case" where, unlike here, an agency's search result provided additional leads that rendered the initial search formulation insufficient.

Plaintiff's second argument is a corollary to its first, and fails for the same reasons addressed above.  Plaintiff contends that "DHS ignored clear leads that 'vet,' 'vetting,' 'screening,' 'electronic device,' 'social media,' and 'inspection' have been used by Donald Trump and DHS in speeches and official documents regarding these subjects and should have been integrated into the search." (Opp.at 3)  This argument not only mischaracterizes the record, but also the holding in *Kowalczyk,* which imposes a requirement to follow "leads" only when they are "so apparent" from the results of the search that they cannot be ignored. *Kowalczk,* 73 F.3d at 389.  In the absence of that "rare case," an agency is entitled to rely on the language in the request to conduct its search.  *Id.*  Indeed, had Plaintiff wanted to encompass these terms within its FOIA request, Plaintiff's own allegations establish that it could have easily included them in the plain language of the request.   Plaintiff's failure to do so is not a basis to contend that DHS's search was inadequate.

For the same reason, Plaintiff's third assertion – that DHS should have consulted "relevant subject matter experts" to formulate its search (Opp. at 3) – fails to call into question

the adequacy of the search that was conducted. To the contrary, the case cited by Plaintiff in support of this argument, *Looks Filmproduktionem GmbH v. CIA,* 199 F. Supp. 3d 153 (D.D.C. 2016), does not impose an obligation on an agency to utilize subject matter experts to formulate a search. Instead, the Court there simply noted that the use of subject matter experts to help with the search in that case was further evidence that the search was reasonable. *Id.* at 168. Rather than help Plaintiff's position, moreover, that case confirms that an agency is not obligated to utilize the "'search design advanced by [a] requester.'" *Id.; cf. Ahanmisi v. United States DOL*, 859 F. Supp. 2d 7, 11 (D.D.C. 2012) ("'there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request'").

Plaintiff's final argument is that DHS only searched for emails on government email accounts and provided no explanation as to why it did not search additional forms of electronic communications, such as text messages or instant messages, or private email accounts. As to the latter, DHS employees are subject to regulations that require any emails concerning official business sent on private accounts to be copied to a government account. (Supp. Holzer Decl. ¶ 8). Because those employees are presumed to comply with those requirements, and Plaintiff has identified no basis to suggest non-compliance, the search of private email is not required. *Wright v. Administration for Children and Families,* 2016 U.S. Dist. LEXIS 140314, at *26 (D.D.C. Oct. 11, 2016) (finding that "agency records responsive to a FOIA request would unlikely be located solely in their personal email accounts, rendering a search of those accounts unnecessary" as government employees are presumed to comply with legal requirements[1]). As

---

[1] The *Wright* Court cited 36 C.F.R. § 1236.22(b) (eff. Nov. 2, 2009) and 44 U.S.C. § 2911(a) (eff. Nov. 2014). In addition, the precursor to 36 C.F.R. § 1236.22(b), 36 C.F.R. § 1234.24(a)(4), provided that agencies "shall ensure that Federal records sent or received on these systems are preserved in the appropriate recordkeeping system . . . ."

to other forms of electronic communications, DHS searched emails because it is not the practice of DHS employees to communicate through text messages or instant messaging. (Supp. Holzer Decl. ¶ 9) Moreover, because Plaintiff's search was not limited to any particular custodians, it would not be reasonable for DHS to canvass every employee with DHS Headquarters offices to assess whether anyone deviated from this practice. *See Ahanmisi,* 859 F. Supp. 2d at 12 ("So long as an agency satisfies the standard of reasonableness, 'a court need not quibble over every perceived inadequacy in an agency's response, however slight.'")

Plaintiff also contends that the Court should review *in camera* the agency's search results from its key word searches, which were determined by the agency to be non-responsive. (Opp. at 4) The agency, however, reviewed those search results and determined that the records were not actually responsive to the request. (Supp. Holzer Decl. ¶ 10 - 12) It is well settled that an agency's affidavits are afforded "substantial weight," *see, e.g., Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986), and "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Accordingly, there is no basis for Plaintiff's request for *in camera* review to assess the agency's responsiveness determination.

As a final argument, Plaintiff contends that DHS failed to describe the search it conducted for the third part of the request seeking "any records generated in connection with topics listed above that raised or were responding to compliance of 5 U.S.C. § 2302(b)(8)." (Opp. at 5) DHS has provided an explanation of that search in the accompanying declaration. (Supp. Holzer Decl. ¶ 11-12) As reflected in that declaration, DHS ran a search in the email of all custodians within DHS Headquarters using the term "ideological test" and "whistleblow*"

(or, alternatively, "5 USC 2302"), and that search did not reveal any responsive documents.  (*Id.* ¶ 12).

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's motion, Defendant requests entry of summary judgment in its favor.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov